Eric T. Sanders
Alaska Bar No. 7510085
FELDMAN ORLANSKY & SANDERS
500 L Street, Fourth Floor
Anchorage, Alaska 99501
Telephone:    (907) 272-3538
Facsimile:    (907) 274-0819
Email:        sanders@frozenlaw.com

Attorneys for Plaintiff State of Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA,<br><br>            Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br><br>            Defendant.<br>_____ | Case No. 3:06-cv-00088-TMB<br><br>**PLAINTIFF S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REMAND TO STATE COURT** |

## INTRODUCTION

This Court should grant Plaintiff's Motion to Remand to State Court, because there is

no ground for asserting federal jurisdiction over this case.

## BACKGROUND FACTS

Plaintiff filed this action in the Superior Court for the State of Alaska, Third Judicial

District at Anchorage, on March 1, 2006, seeking compensatory damages for the cost of past

and future medical care incurred by the State under Alaska's Medicaid program, plus restitution, civil penalties, and other pecuniary relief required as a result of Defendant's improper statements and actions in the State of Alaska The Complaint asserts claims arising solely under Alaska statutory and common law. In particular, the Complaint contains claims for violation of the Alaska Unfair Trade Practices and Consumer Protection Act, and claims sounding in common law negligence and strict liability.

On April 19, 2006, Defendant removed this action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, alleging that Plaintiff's state law claims raise substantial issues of federal law and, therefore, confer federal question jurisdiction under 28 U.S.C. § 1331, or in the alternative, that Plaintiff's claims are preempted by federal law. Defendant's arguments are unavailing, as Plaintiff's claims do not raise substantial and disputed issues of federal law requiring interpretation or application of federal law for their resolution, and De fendant's purported preemption defense, even if available, is insufficient to confer removal jurisdiction in this Court.

## ARGUMENTS

### THIS CASE SHOULD BE RETURNED TO STATE COURT.

**I.    Standard For Removal.**

The removal statute allows a Defendant to remove to federal court only cases over which "the District Courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a) (2000); *see also Lontz v. Tharp,* 413 F.3d 435, 439 (4th Cir. 2005) (citations

omitted); *California v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004). The burden of

demonstrating jurisdiction is on the party seeking removal. *See Dynegy*, 375 F.3d at 838.

Moreover, the Court is obliged to strictly construe removal jurisdiction because of significant

federalism concerns. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09

(1941); *Lontz,* 413 F.3d at 440.

Removal is generally only appropriate in three circumstances. First, the defendant

may remove a case if the parties meet the statutory requirements for the Court's diversity

jurisdiction. *See* 28 U.S.C. §§ 1332, 1441(b); *Lontz,* 413 F.3d at 439. Second, the defendant

may remove a case if the plaintiff's complaint raises a substantial federal question. *See* 28

U.S.C. § 1441(b); *Lontz,* 413 F.3d at 439; *ARCO Envtl. Remediation, L.L.C. v. Dep t. of*

*Health & Envtl. Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000). Finally, even where the

plaintiff's complaint does not on its face raise a federal issue, a case may be properly

removable under the "complete preemption" doctrine if plaintiff's state law claims have been

totally subsumed by federal law. *See Lontz,* 413 F.3d at 439; *ARCO*, 213 F.3d at 1114.

Defendant in this case asserts that this case arises under federal law, under one or both

of the latter two theories. As the following sections show, because Plaintiff's claims for

relief arise under state statutory and common law, and do not require the construction or

application of federal law as essential elements of those claims, there is no substantial federal

question, and remand to state court is required.

**II.    Applying the  Well-Pleaded Complaint  Rule, Plaintiff s Claims Do Not  Arise Under  Federal Law.**

Absent diversity jurisdiction, a civil action filed in state court may only be removed if the claim "arises under" federal law. *See Beneficial Nat l Bank v. Anderson,* 539 U.S. 1, 6 (2003) (citing 28 U.S.C. § 1441(b)).   Initially, whether the claim arises under federal law must be determined by applying the "well-pleaded complaint" rule. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987); *Gully v. First Nat'l Bank,* 299 U.S. 109, 112-13 (1936). Under this rule, a claim arises under federal law for jurisdictional purposes only if the plaintiff's statement of the cause of action on the face of its properly pleaded complaint affirmatively shows it is based on federal law. *See Beneficial  Nat l Bank,* 539 U.S. at 6-8; *Caterpillar,* 482 U.S. at 392.  The mere presence of a federal defense to a state law claim, even one relying on the preemptive effect of a federal statute, is insufficient to confer federal jurisdiction and will not provide a basis for removal. *See Beneficial Nat l Bank,* 539 U.S. at 6 (citing *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152 (1908), and *Taylor v. Anderson,* 234 U.S. 74 (1914)).

As noted above, Plaintiff's complaint alleges causes of action that arise strictly under Alaska statutory and common law.  These are the exclusive bases upon which Plaintiff' s claims for relief stand, and therefore, application of the "well-pleaded complaint" rule requires remand in this case.

III.    **Plaintiff s Claims Do Not Raise A   Substantial Federal Question,   Because Application Of Federal Law Is Not Necessary For Their Resolution.**

An exception to the 'well-pleaded complaint" rule provides for federal jurisdiction in limited circumstances where the plaintiff's claims raise a "substantial federal question." *Franchise Tax Board v. Constr. Laborers Vacation Trust for S. Calif.,* 463 U.S. 1, 13 (1983). Under the substantial federal question doctrine, a stat e law cause of action actually arises under federal law, even though Congress has not provided a federal private right of action, "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 9 (citing *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180 (1921), and *Hopkins v. Walker,* 244 U.S. 486 (1917)).

The incorporation of a federal standard in a state-law action does not implicate the substantial federal question doctrine. *See Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804 (1986).   Similar to the current case, *Merrell Dow* involved allegations both that inadequate warnings on a drug's label and promotion of that drug were in violation of the Federal Food, Drug & Cosmetic Act. *See id.* at 806.   In rejecting federal jurisdiction, the Court found it important, if not dispositive, that Congress had not provided, explicitly or implicitly, a private right of action under the FDCA. *See id.* at 812.   "We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently

'substantial' to confer federal-question jurisdiction." *Id.* at 814. Some federal courts began to apply this as a strict test for jurisdictional purposes.

In *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. ___, 125 S.Ct. 2363 (2005), the Supreme Court stated that the presence or absence of a private right, while relevant, is not dispositive on the issue of substantial federal question jurisdiction. Defendant in the present case relies heavily on *Grable & Sons,* but the reliance in misplaced. In *Grable & Sons,* the IRS seized the plaintiff's property to satisfy a federal tax delinquency. After notifying the plaintiff by certified mail of the pending sale of its property, the IRS sold the property, conveying a quitclaim deed to the defendant. The plaintiff subsequently brought a quiet title action against the defendant in state court alleging the IRS' notice of the sale was deficient because, plaintiff claimed, federal law required personal service of the notice. The defendant removed the case, asserting that the interpretation of the federal tax code's notice provision was a substantial federal question conferring "arising under" jurisdiction in federal court. The Supreme Court agreed. *See id.* at 2366. In doing so, the Court refused to adopt a bright line rule for jurisdiction in such cases, opting instead to analyze cases in light of the following question: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" *Id.* at 2368. An essential element of the plaintiff's claim in the underlying property dispute in *Grable & Sons* was that the IRS failed to follow federal tax law

governing notice of the tax sale. Because the defendant asserted the notice was sufficient, the plaintiff's claim stood or fell on an interpretation and application of federal tax law, which was actually in dispute. Thus, the Court easily found the case "arose under" federal law. *See id.*

In clarifying its previous holding in *Merrell Dow,* the Court explained that the lack of a private right of action is not a "missing federal door key, always required," but rather is a "missing welcome mat, required in the circumstances." *Id*. at 2370. The difference is the enormity of cases that would be touched by a ruling finding federal jurisdiction whenever a state claim contains an embedded federal issue. The Supreme Court did not intend to allow federal jurisdiction over all cases that rely in any way on federal law. Because most states recognize a violation of federal law as evidence of negligence, or negligence per se, the Court explained *Merrell Dow* as follows: "A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling or other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts." *Grable & Sons,* 125 S. Ct. at 2370-71. This concern was absent in *Grable & Sons* because that case was at heart a state quiet title action, and only rarely would such an action involve contested issues of federal tax law. The Court thus found the exercise of federal jurisdiction in that particular case would "portend only a microscopic effect on the federal-state division of labor." *Id.* Thus, following *Grable & Sons,* the rule is that, for a federal court to properly exercise jurisdiction, there must be a substantial, disputed federal issue, and the exercise of

jurisdiction must be appropriate in light of "congressional judgment about the sound division of labor between state and federal courts." *Id.* at 2367.

That standard is not met in the instant case. Here, Plaintiff has alleged violations of state consumer fraud and unfair trade practice statutes, as well as claims under Alaska common law. To the extent federal law is implicated at all, it is implicated only in light of the state statutory and common law violations, and even then only as a factual predicate for such violations, not as an essential element. In other words, any alleged violation of federal law is either a violation of state law itself, or evidence of such a violation. No element of Plaintiff's claims requires either the interpretation or application of federal law. Plaintiff's claims rise and fall on the interpretation and application of state law only, not federal law.

Plaintiff's complaint simply cannot be read to raise any substantial federal question actually in dispute. To the extent there is overlap between state and federal law, it is merely coincidental. That the factual allegations may amount to a violation of federal law is only incidental to Plaintiff's claims. Proof of a violation of federal law is not necessary to those claims. What is essential is that the facts alleged amount to a violation of state law. The trial court in this case will need to apply only Alaska substantive law to determine the merits of Plaintiff's claims. Any potential interpretation of federal law would be necessary only in the context of applying state law. As the Court concluded in *Merrell Dow,* "the presence of a claimed violation of the [FDCA] as an element of a state cause of action is insufficiently

'substantial' to confer federal jurisdiction." 478 U.S. at 814.  Importantly, nothing in *Grable & Sons* purports to limit, much less overrule the Court's previous holding on this issue.

Other federal courts likewise have concluded that the presence of allegations related to FDCA violations do not create sufficient federal questions. *See, e.g., Moncure v. Olympus Am., Inc.,* 290 F. Supp. 2d 726, 728-29 (S.D. Miss. 2003) (finding presence of "fraud on the FDA" allegations in otherwise state law theories of recovery did not raise substantial federal question); *Rubel v. Pfizer, Inc.,* 276 F. Supp. 2d 904, 908 (N.D. Ill. 2003) (holding plaintiff's state law consumer fraud claim relating to "off-label" marketing of drug did not give rise to federal question jurisdiction); *McCallister v. Purdue Pharma L.P.,* 164 F. Supp. 2d 783, 793-94 (S.D. W. Va. 2001) (holding that "interpretive issues" under the FDCA do not amount to a substantial federal question).  This Court should follow this persuasive precedent and find that Plaintiff's allegations of "off-label" promotion by Defendant do not raise a substantial, disputed federal issue giving this Court original jurisdiction over this action.

**IV.    *In re Zyprexa Products Liability Litigation* Is A Misapplication Of Federal Question Jurisprudence.**

Defendant relies heavily on *In re Zyprexa Prods. Liab. Litig.,* 375 F. Supp. 2d 170 (E.D.N.Y. 2005), as support for its position that federal jurisdiction is present in this case after *Grable & Sons* due to important federal issues relating to prescription drug regulation and federal Medicaid regulation.  Admittedly, the district court in *In re Zyprexa* found that *Grable & Sons* dictated a finding of federal jurisdiction because of "the substantial federal funding provisions involved and the allegations about the violation of federal law through

improper off-label use." *In re Zyprexa,* 375 F. Supp. 2d at 172. Plaintiff respectfully suggests the *In re Zyprexa* opinion is not particularly instructive here, perhaps because the issues were not properly addressed in the briefing to that court. The *In re Zyprexa* court did not specifically point to an "actual and disputed" federal issue, and did not consider the impact of its decision on the balance of federal and state court labor. This Court should do so in deciding whether Defendant can avail itself of federal jurisdiction.

This Court should be guided by the Supreme Court's decision in *Merrell Dow,* which was reinforced and not altered by *Grable & Sons,* rather than by the decision of another district court. As noted above, *Grable & Sons* did not undermine the Supreme Court's determination in *Merrell Dow* that allegations regarding FDCA violations as mere elements of a state law cause of action are insufficient to raise a substantial federal question, not only because of the absence of a private right o f action, but also because accepting jurisdiction under those circumstances would mean a "tremendous number" of cases previously subject to state court jurisdiction would flood the federal courts. *See Grable & Sons,* 125 S.Ct. at 2370. Federal jurisdiction was appropriate in *Grable & Sons* because the meaning of a federal statute was "the <u>only</u> legal or factual issue contested in the case." *Id.* at 2368 (emphasis added). The plaintiff's claim for relief sank or swam based upon the interpretation and application of federal law. That is simply not the case here, where Plaintiff's claims will be won or lost on the application of state law, with little reference to federal law. In fact, it

is quite possible Plaintiff's claims could be resolved with no interpretation or application of federal law.

Even in the wake of *Grable & Sons,* the lower federal courts have been reluctant to expand federal question jurisdiction under the "substantial federal question" doctrine. Other courts have rejected jurisdiction claims similar to those pressed by Defendant in this case. *See, e.g., Eastman v. Marine Mech. Corp.,* 438 F.3d 544, 553-54 (6th Cir. 2006) (holding state law theories of recovery citing federal statutes as sources of public policy violated by defendant did not raise substantial federal question); *Snook v. Deutsche Bank AG,* 410 F. Supp. 2d 519, 523 (S.D. Tex. 2006) (holding no jurisdiction existed where plaintiffs' claims did not call federal tax law into question, but instead challenged defendants' interpretation of that law in state malpractice, negligence and breach of fiduciary duty cases).

While the *In re Zyprexa* court may have been concerned that perceived federal issues deserve interpretation or application by a federal forum, a thoughtful examination of the statutory scheme shows that Congress did not intend that all issues involving the state-administered Medicaid programs should be resolved in federal court. While federal law created the Medicaid program, Congress has delegated to the states the administration and operation of the program through individual state Medicaid agencies. Most importantly, it has delegated the responsibility to the states to carry out the function that Plaintiff is attempting to carry out in this case. The federal statute provides, in pertinent part:

A state plan for medical assistance must—

(25) provide—

(A) that *the State* or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties.. to pay for care and services available under the plan, including—

    (i) the collection of sufficient information …to enable *the State* to pursue claims against such third parties …

(B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement *the State* can reasonably expect to recover exceeds the cost of recovery *the State* or local agency will seek reimbursement to the extent of such legal liability;

        \* \* \*

(H) that to the extent that payment has been made under *the State* plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, *the State* has in effect such laws under which, to the extent payment has been made under *the State* plan for medical assistance for health care items or services furnished to an individual, *the State* is considered to have acquired the rights of such individual to payment by any other party for such health care items or services; . . . .

42 U.S.C. § 1396a(a)(emphases added). Thus, while the federal government may have some interest in state Medicaid programs generally, Congress has clearly indicated its intention that the *states* protect that interest. *Cf. Arkansas Dep t. of Health & Human Services v. Ahlborn*, ___ U.S. ___, 2006 WL 1131936 \*9 (May 1, 2006). The duty to look for reimbursement and, importantly, the right to reimbursement is vested solely in the *states*. Notably, other than requiring the states to undertake this duty as a prerequisite to participation in the Medicaid program, Congress has been silent on the issues of how, when,

or where the states would comply with this duty other than the above referenced provision requiring the states to have laws providing an assignment of rights from individuals. This is significant, in that Congress has seen fit to delegate to the states even the duty to put into effect laws enabling recovery from third parties.

This must be considered significant evidence of congressional judgment that federal jurisdiction over such issues is neither necessary nor appropriate. Congress has specifically left it to the states both to seek the recovery, and to put into place laws which enable the recovery. There is no basis for assuming that Congress wanted this done in a federal forum, particularly when it is state law that must be interpreted and applied to determine if the state is entitled to the recovery. The presence of federal funding does not in and of itself create a significant enough federal interest to warrant an exercise of jurisdiction. *See, e.g., Jobs, Training & Servs., Inc. v. East Tex. Council of Gov ts,* 50 F.3d 1318, 1326-27 (5th Cir. 1995) (finding court lacked substantial federal question jurisdiction over state law claims involving a contract using federal grant money where Congress delegated the responsibility to ensure financial responsibility and compliance with federal mandates to the state, and plaintiff's claims did not require the construction of federal law); *Gingerich v. White Pigeon Cmty. Schs.,* 736 F. Supp. 147, 150-51 (W.D. Mich. 1990) (holding no substantial federal question jurisdiction created by mere receipt and use of federal funds where plaintiff's claims do not turn on the validity, construction or effect o f federal law as an essential element of plaintiff's case); *Banco de Ponce v. Hinsdale Supermarket Corp.,* 663 F. Supp. 813, 818-19

(E.D.N.Y. 1987) (concluding court lacked substantial federal question jurisdiction over state law contract claims involving federal food stamp program violations where Congress delegated administration of the program to the states).

While Defendant attempts to create a federal issue by arguing federal law governs what drugs must be included on a state's formulary list and requires the state to reimburse the drug manufacturer for such drugs, neither a drug's inclusion on the Medicaid formulary list in Alaska nor the State's reimbursement for the same confers federal jurisdiction in this case. Those issues are not the focus of Plaintiff's claims nor essential to an adjudication of them. Plaintiff's claims involve its reimbursement for violations of state law and the losses it has incurred for the same. To the extent Defendant raises these alleged federal issues as a defense to Plaintiff's claims, they are inconsequential to the Court's analysis of its removal jurisdiction. *See Beneficial Nat l. Bank v. Anderson*, 539 U.S. 1, 6 (2003); s*ee also Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152 (1908) (holding a federal defense to a state law claim is insufficient for federal question jurisdiction).

Again arguing that federal Medicaid law confers removal jurisdiction in this case, Defendant cites a recent California District Court decision, *County of Santa Clara v. Astra USA, Inc.,* 401 F. Supp. 2d 1022 (N.D. Cal. 2005), in support of its argument that Plaintiff's claims raise substantial federal questions. The case is inapposite. Just as in *Grable & Sons,* the claims in *County of Santa Clara* involved a dispute requiring the interpretation and application of a specific federal statute. *See* 401 F. Supp. 2d at 1025 ("All of the claims

asserted by Santa Clara explicitly involve allegations it was victimized by drug prices in excess of those allowed under a federal statute… .").  The court found the resolution of a federal issue essential to the plaintiff's claims, thus meeting the *Grable & Sons* requirement of a substantial and actually disputed federal issue.  Such an issue is lacking in the instant case.

*In re Zyprexa Product Liability Litigation* notwithstanding, there is simply no substantial and disputed federal question in this case that requires federal adjudication for resolution of Plaintiff's claims.

## V.     A Finding Of Federal Jurisdiction Would Impermissibly Shift The Balance Between The State And Federal Courts.

Another problem presented by the order in *In re Zyprexa* involves the sensitive jurisdictional balance addressed by *Grable & Sons.*  A finding of federal jurisdiction under the circumstances extant in this case would cause a seismic shift in the balance between the state and federal judicial systems.  If federal jurisdiction is present here, where no federal law need be applied, but where Medicaid funds are involved, the number of cases possibly affected is exponential.  Indeed, a state law tort claim arising from an automobile accident would present this Court with federal question jurisdiction if the plaintiff in the case were a Medicaid recipient.

This concern was addressed in *Wisconsin v. Abbott Labs.,* 390 F. Supp. 2d 815, 823-24 (W.D. Wis. 2005), a decision in conflict with *County of Santa Clara* (discussed in the previous section).  *Abbott Labs.* is much more apposite and offers persuasive guidance.  In

that case, the State of Wisconsin filed suit against various drug manufacturers in state court alleging overstatement of wholesale drug prices in violation of state law, which caused the state to overpay for the drugs under Medicaid and Medicare. The defendants removed the case to federal court, asserting the state's complaint raised substantial and disputed issues of federal law because Medicare and Medicaid funds were involved and thus a substantial federal interest attached. While the court found the case did require the interpretation of a Medicare statute as an element of the plaintiff's claim, thus presenting a disputed and substantial federal issue not present in the instant case, the court held the federal and state interests in the case were "at best" equivalent in light of the states' primary role in Medicaid. *See id.* at 823. Further, the court found that exercising jurisdiction would work "a significant disruption in the division of labor between federal and state courts." *Id.* Applying that analysis in the current case shows that the number of cases affected and the effect on the workload of the federal judiciary would be even larger if the minimally evident federal interest present in this case were substantial enough to confer federal jurisdiction. Moreover, as discussed above, Congress has indicated clear intent to cede to the states a very large role in administering the Medicaid program, particularly the administration of third-party recovery provisions.

As the Plaintiff's claims in this case do not require the construction or application of a disputed issue of federal law as essential elements, and do not implicate significant federal interests, they do not raise a substantial federal question conferring jurisdiction under 28

U.S.C. § 1331. Further, an exercise of jurisdiction in this case would result in a significant disruption of the division of labor between the state and federal courts. The Court should, therefore, grant Plaintiff's Motion to Remand the case to state court for a lack of federal jurisdiction.

## VI.  Because The FDCA Does Not Completely Preempt State Law, Removal Is Not Warranted Under An Exception To The   Well-Pleaded Complaint  Rule.

Defendant argues in its notice of removal that Congress intended to so thoroughly regulate the marketing and promotion of prescription drugs that any claim involving such activity is completely preempted by the FDCA. As noted above, an exception to the "well-pleaded complaint" rule exists when a plaintiff's state law claims have been totally subsumed by federal law. *See Beneficial Nat l Bank,* 539 U.S. at 8; *Lontz,* 413 F.3d at 439. However, the Supreme Court is reluctant to find complete preemption, and has in fact done so under only three statutory schemes to date. *See Beneficial Nat l Bank,* 539 U.S. at 10-11 (National Bank Act); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1987) (ERISA § 502(a)); *Avco Corp. v. Aero Lodge No. 735, Int l Ass n of Machinists,* 390 U.S. 557, 560 (1968) (Labor Management Relations Act § 301). In all three cases, the federal statutory scheme at issue was found to provide the exclusive cause of action for the claim asserted and to set forth procedures and remedies for the cause of action. *See Beneficial Nat l Bank,* 539 U.S. at 8, 11. That standard is not met here. As even Defendant readily concedes, not only does the FDCA not provide an exclusive cause of action or remedy, it provides no private right of action.

Defendant's argument that *Grable & Sons* may somehow be persuasive or controlling on this issue confuses two separate lines of federal jurisprudence. *Grable & Sons* dealt solely with the issue of federal courts' Article III "arising under" jurisdiction when a plaintiff's complaint raises an issue of federal law essential to resolution of the plaintiff's claims. That jurisprudence is concerned with the appropriate forum for determining the validity of a plaintiff's claims when they present a disputed issue of federal law and may be detrimental to a plaintiff's choice of *where* to present his claims. That is a far cry from the court's jurisprudence regarding complete preemption, which deals with the sensitive issue of undermining a plaintiff's ability to determine *what* claims he can plead, because all such claims have been entirely displaced by federal law. "Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law … absent some clearly expressed direction." *Custer v. Sweeney,* 89 F.3d 1156, 1167 (4th Cir. 1996). In the instant case, in fact, a finding of complete preemption would result in a denial to injured plaintiffs of any remedy for injury related to a prescription drug. Such a finding is unsupported by any recitation by Defendant of congressional intent or any case law.

**VII.    Even If Conflict Preemption Were An Available Defense To Defendant, It Would Not Provide A Basis For Removal To This Court.**

Defendant claims that, in the absence of complete preemption, the FDA has recently indicated its position that some state causes of action conflict with its regulatory authority under the FDCA. Conflict preemption exists when state law "actually conflicts with federal

law, that is, when it is impossible to comply with both state and federal law, ., .or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984) (citations omitted). While a complex analysis of conflict preemption of state law claims involving injuries related to prescription drugs is beyond the scope of this brief, and unnecessary for the Court's consideration of this remand motion, it is worth noting that years of federal jurisprudence have found no such preemption. *See, e.g., Tobin v. Astra Pharm. Prods., Inc.,* 993 F.2d 528, 537-38 (6th Cir. 1993) (holding no preemption of state law design defect claim against prescription drug manufacturer); *Hill v. Searle Labs*, 884 F.2d 1064, 1068 (8th Cir. 1989) (finding no congressional intent to preempt common law with FDA regulation); *Hurley v. Lederle Labs.,* 863 F.2d 1173, 1176 (5th Cir. 1988) (holding no FDCA preemption of state failure to warn claim against vaccine manufacturer); *Wells v. Ortho Pharm. Corp.,* 788 F.2d 741, 746 (11th Cir. 1986) (finding FDA determination that warning was sufficient may not be determinative for state tort law purposes); *Peters v. Astrazeneca, LP,* 417 F. Supp. 2d 1051, 1056-57 (W.D. Wis. 2006) (finding no preemption of state failure to warn claims regarding over the counter drug); *Witczak v. Pfizer, Inc.,* 377 F. Supp. 2d 726, 729-32 (D. Minn. 2005) (same with regard to prescription drug); *Cartwright v. Pfizer, Inc.,* 369 F. Supp. 2d 876, 881-87 (E.D. Tex. 2005) (same); *Caraker v. Sandoz Pharm. Corp.,* 172 F. Supp. 2d 1018, 1032-39 (S.D. Ill. 2001) (same); *McCallister,* 164 F. Supp. 2d at 789-92 (finding no preemption of class claims regarding off-label promotion); *Motus v. Pfizer, Inc.,*

127 F. Supp. 2d 1085, 1092-96 (C.D. Cal. 2000) (holding FDCA did not preempt state law failure to warn claims).   Regardless of the FDA's puzzling new pronouncement of a supposed "long standing" policy of preemption of certain state law claims, such conflict preemption does not provide a basis for removal to this Court.  *See Beneficial Nat l Bank,* 569 U.S. at 13 (noting that while preemption might require a state court to dismiss a particular claim filed under state law, it does not provide grounds for removal) (Scalia, J., dissenting); *Lontz,* at 413 F.3d at 439 (stating a federal defense to a state law claim is insufficient to support removal).   Clearly, conflict preemption is not a viable theory for attaching federal question jurisdiction to this action.

Despite Defendant's contention that *Grable & Sons* did not explicitly limit its holding on the substantial federal question doctrine to questions arising from the face of the plaintiff's complaint, the Court's analysis was indeed directed at a claim contained in the plaintiff's complaint, and the Court breathed not a word indicating any indication to displace or overrule one hundred years of its prior precedent finding a federal defense insufficient to create "arising under" jurisdiction.

Defendant's arguments regarding conflict preemption provide no support for its arguments for jurisdiction in this Court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this action be immediately remanded to the Superior Court for the State of Alaska Third Judicial District at Anchorage.

RESPECTFULLY SUBMITTED this 8th day of May, 2006


By    /s/ Eric T. Sanders

FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:    (907) 272-3538
Facsimile:    (907) 274-0819
Email:        sanders@frozenlaw.com
[Alaska Bar No. 7510085]

Attorneys for Plaintiff State of Alaska

Certificate of Service

I certify that on May 8, 2006, a copy of the
foreground  Plaintiff's Memorandum in Support
of Motion to Remand to State Court was
served electronically on:

Brewster H. Jamieson

By    /s/ Eric T. Sanders