Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone:   907-277-9511
Facsimile:   907-276-2631
Email:   jamiesonb@lanepowell.com
Attorneys for Defendant
Eli Lilly and Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA,<br><br>       Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br><br>       Defendant. | Case No. 3:06-cv-00088-TMB<br><br>**DEFENDANT'S OPPOSITION TO<br>MOTION TO REMAND TO STATE COURT** |

   On April 19, 2006, defendant Eli Lilly and Company ("Lilly") removed this action to this Court because plaintiff's Complaint raised substantial and disputed federal questions under the federal Food, Drug and Cosmetic Act and under federal Medicaid law.  The transferee judge in the Zyprexa MDL decided this very issue in a case brought by the State of Louisiana, and held that there was federal jurisdiction.  Nevertheless, without demonstrating a difference between the two cases, plaintiff now moves to remand this case to state court, arguing that "Plaintiff's complaint alleges causes of action that arise strictly under Alaska statutory and common law."  Plaintiff's Br, at 4.  However, the mere fact that state law is alleged to provide plaintiff's causes of action is far from dispositive.  Federal jurisdiction exists here because plaintiff's claims require construction and application of FDA regulations relating to unapproved uses and labeling of Zyprexa.  In addition, plaintiff seeks to recover millions of dollars of Medicaid funds, at least fifty percent of which derives from the federal government.  These federal issues are "substantial" within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005), because they affect two complex federal regulatory schemes.

   Therefore, plaintiff's Motion to Remand should be denied.

# I.  ARGUMENT

## A.  Plaintiff's Claims Raise Substantial And Disputed Issues Of Federal Law

Zyprexa is a widely-prescribed medicine that is vital to the health of thousands of mentally ill patients.  It has been on the market since 1996[1] and physicians are familiar with the risks and benefits of the medicine.  It has been prescribed to millions of patients, and the medical literature contains thousands of articles about Zyprexa.[2]  Plaintiff alleges that, "notwithstanding the limited uses approved by the FDA, Defendant advertised and sold Zyprexa for a number of non-approved or 'off-label' uses, including, but not limited to, Alzheimer Disease, Geriatric Dementia, Tourette's Syndrome, Pervasive Developmental Delay, Autism, Anorexia Nervosa, and general depression." (Compl. ¶ 12.)  Plaintiff further claims that (i) "[i]n a continuing effort to illegitimately receive profits from Zyprexa, Lilly's sales force . . . focused upon marketing and selling the drug as treatment for depression and anxiety, rather than the psychotic conditions for which Zyprexa had been approved; (ii) Lilly employed its immense marketing resources to encourage and promote sales for unapproved uses . . . even though it knew Zyprexa was not approved for treatment of those conditions." (Compl., ¶ 12.)  Plaintiff hopes to prove that Lilly's promotion of Zyprexa violated federal law, which forms the basis for the damages plaintiff seeks.

In addition, plaintiff's warnings allegations amount to a claim that Lilly should have changed its FDA-approved Zyprexa Package Insert before the class-wide labeling change ordered by the FDA in September 2003, to include "the serious risks of diabetes, hyperglycemia, diabetic ketoacidosis, and other serious conditions associated with the use of Zyprexa." (Compl., ¶ 17.)  This requires that plaintiff show that the FDA would have approved a label change before September 2003, had Lilly proposed one.

Based on its off-label marketing and warnings allegations, the plaintiff seeks to recover all of the money that the Alaska Medicaid program has paid for Zyprexa.  Plaintiff claims that, "[i]n making Zyprexa available to Medicaid patients, [Lilly] knowingly misrepresented to the State of Alaska that Zyprexa was safe and effective," and that the "State of Alaska allowed the purchase of

---

[1] Compl. ¶ 9.
[2] *See* Compl. ¶¶ 14-15 (referring to literature beginning in 1998).

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Zyprexa for Alaska Medicaid recipients based upon such misrepresentations . . . ." (Compl., ¶ 25.) In other words, plaintiff claims that, but for Lilly's misrepresentations, it would not have included Zyprexa in its Medicaid formulary as a drug for which reimbursement was provided under the Medicaid program. Necessarily, the plaintiff must prove that it could have excluded Zyprexa from its Medicaid formulary, and refused to pay for Zyprexa prescriptions, consistent with the federal Medicaid law. Since Alaska receives approximately 50% of its Medicaid funding from the federal government, a large percentage of any money that plaintiff might recover will have to be returned to the federal government.[3]

Plaintiff's case is so infused with federal issues that plaintiff cannot credibly assert that "Plaintiff's claims do not raise substantial and disputed issues of federal law requiring interpretation or application of federal law for their resolution. . . . ." (Plaintiff's Br., at 2.) In fact, although plaintiff carefully avoids express references to federal statutes, regulations, or causes of action, its complaint directly implicates two areas of federal law: (i) the federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq*, which regulates prescription drug manufacturers' public and promotional statements about prescription drugs; and (ii) federal Medicaid law, which determines which drugs a State must cover under its Medicaid program and the limited circumstances under which a State can decline to pay for such drugs. *See* 42 U.S.C. §§ 1396r-8(d)(1)B, (d)(4).

### B. Federal Jurisdiction May Be Asserted Even Where Plaintiff's Cause Of Action Is Provided By State Law.

With the Judiciary Act of 1875, Congress first conferred on lower federal courts jurisdiction for cases arising under federal law. The current version of that provision is found at 28 U.S.C. § 1331, which bestows on district courts "original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2004) (emphasis added). A defendant has a right to remove any case of which the district court would have had original jurisdiction.[4]

---

[3] *See CRS Report for Congress: Federal Medical Assistance Percentage (FMAP) for Medicaid*, Congressional Research Service, The Library of Congress, http://opencrs.cdt.org/rpts/RS22333_20051128.pdf (last visited May 22, 2006).

[4] 28 U.S.C. § 1441(a).

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

In *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), the Court concluded that, under the forerunner of § 1331, "arising under" jurisdiction could be claimed where "the right to relief depends upon the construction or application of the constitution or the laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation." *Id.* at 199. In *Smith*, a shareholder of a bank objected to the bank's proposed purchase of certain bonds, and asked that the bank be enjoined from buying them because the bonds were issued by Federal Land Banks that Congress has no power to create. While the cause of action arose under Missouri law, the majority held that there was federal jurisdiction because there was a substantial federal issue.

Although some intervening decisions, such as *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804 (1986), had appeared to undermine *Smith,* the vitality of *Smith* was affirmed by the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 125 S.Ct. 2363, 2370 (2005). Under *Grable*, "arising under" jurisdiction exists over state law claims which "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 125 S. Ct. at 2368. In this "contextual enquiry," *id.,* at 2369, considerations such as the existence of a private federal right of action are "relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that [28 U.S.C.] §1331 requires." *Id.*

Since *Grable* was decided, several courts have found federal jurisdiction over state law claims. For example, in *Nicodemus v. Union Pacific Corp.,* 440 F.3d 1227 (10th Cir. 2006), owners of land across which Union Pacific's railroad tracks ran brought trespass and unjust enrichment claims against the company after it allowed telecommunications companies to install fiber-optic cable along its right-of-way. Union Pacific asserted that the federal statute granting its right-of-way authorized this use, and the Court of Appeals held that this was a sufficient federal question to support jurisdiction because plaintiffs had to show a misuse of the federally-granted right of way.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

*Id.,* 1234-35.[5]   Similarly here, there are federal issues of substantial importance imbedded in plaintiff's claims.

      **C.**    **Federal Questions Relating To Off-Label Promotion Lie At The Heart Of The Complaint.**

The first "actually disputed and substantial" federal issue is whether Lilly's marketing violated federal regulations.

At the heart of plaintiff's Complaint lie allegations that Lilly marketed Zyprexa for so-called "off-label" uses—uses not approved by the FDA. Plaintiff alleges that Lilly lacked proof of Zyprexa's efficacy for these off-label uses and yet encouraged doctors to prescribe Zyprexa for these uses, thereby causing the State Medicaid agency to expend money it would not otherwise have spent. (*See. e.g.,* Compl. ¶¶ 12, 19, 20, 22, 32, 37, 42, 43, 46.)

Federal regulations require that all claims in promotional labeling or advertising be consistent with warning, labeling and promotional materials approved and monitored by the FDA. 21 C.F.R. § 202.1(e)(4)(2005). In addition, the extent to which the FDA may prohibit manufacturers of medicines and medical devices from discussing off-label uses with physicians consistent with the First Amendment has been and continues to be debated.[6]

Similar claims that Lilly violated federal law by its alleged off-label marketing were raised in the Louisiana Attorney General's action. In that case, which plaintiff does not and cannot distinguish, the United States District Court for the Eastern District of New York found that the alleged violations of federal regulations, framed by Constitutional considerations, created federal question jurisdiction. *See In re Zyprexa Products Liability Litigation*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005).[7]

---

[5] Other post-*Grable* decisions finding federal jurisdiction over state-law claims are discussed *infra* at pp. 13-14.

[6] Recent articles on the subject include: Dorfman, *Avoiding Legal and Ethical Pitfalls of Industry-Sponsored Research: The Co-Existence of Research, Scholarship, and Marketing in the Pharmaceutical Industry*, 59 *Food & Drug L. J.* 595 (2004); Noah, *Ambivalent Commitments to Federalism in Controlling the Practice of Medicine.* 53 Kan. L. Rev. 149 (2004); *Off-Label or Out of Bounds? Prescriber and Marketer Liability for Unapproved Uses of FDA-Approved Drugs,* 12 Ann. Health L. 295 (2003).

[7] Plaintiff asks this Court to conclude that *In re Zyprexa* "is a misapplication of federal question jurisdiction." Plaintiff's Br., at 9. Notwithstanding plaintiff's attempt to discount Judge Weinstein's legal scholarship, the reasoning and holding of *In re Zyprexa* are completely consistent with *Grable*. The decision, which was rendered after extensive briefing and oral argument, has not been criticized in any published opinion.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

### D. Plaintiff's Complaint Raises Federal Questions About Lilly's FDA-Approved Label.

The complaint also alleges that Lilly illegally promoted an unsafe drug for public use and failed to warn the FDA, doctors, state regulators, and consumers of the risks of the medication. S*ee, e.g.,* Compl., ¶¶ 7, 17, 18, 19, 20, 21, 22, 24, 25, 30, 32, 33, 34, 36, 37, 38, 42, 43, 44, 45, 46, 47, 49, 50, 53, 54. Specifically, plaintiff contends that Lilly should have changed the FDA-approved warnings in Zyprexa's package insert before the class-wide labeling change required by the FDA in September 2003. Though the plaintiff casts these allegations in terms of common-law and state law claims, they require construction of, and allege violations of, the FDCA and its implementing regulations.

As a currently-marketed prescription drug, Zyprexa is subject to comprehensive regulation by the FDA. The FDCA requires the FDA to ensure that "drugs are safe and effective" for their intended uses, 21 U.S.C. § 393(b)(2)(B), in part by "promptly and officially reviewing clinical research and taking appropriate action on the marketing of regulated products." 21 U.S.C. § 393(b)(1). The Secretary of the FDA has the authority to promulgate regulations to enforce the FDCA, which are codified in the Code of Federal Regulations, 21 C.F.R. § 200, *et seq.* 21 U.S.C. § 371(a).[8]

Resolution of plaintiff's warnings-related claims requires construction and application of the relevant federal statutory and regulatory provisions. To prevail, plaintiff needs to show that, under relevant law and regulations, the FDA would have allowed Lilly to make the label change that plaintiff alleges Lilly should have made.

The importance of conformity with federal law is emphasized by a recent pronouncement by the FDA. On January 24, 2006, the FDA announced a new rule, which includes a detailed and emphatic statement of the FDA's intention that its approval of product labeling, whether in the "old"

---

[8] To accomplish its purpose, the FDA maintains a Center for Drug Evaluation and Research (the "CDER"). Among the responsibilities of the CDER is the pre-marketing approval of package inserts that properly outline the benefit and risk information relevant to the decision to prescribe the drug. Once drugs are marketed, the CDER continues to monitor them for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market. In short, the federal government, through the CDER, is continuously involved the evaluation and monitoring of the effectiveness and safety of prescription drugs. *See* government website http://www.fda.gov/cder/about/faq/default.htm (last visited May 22, 2006).

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

format or the format required by the new rule, completely preempts most state law claims related to the adequacy of prescription drug warnings. Such state law claims, according to the FDA, frustrate "the full objectives of the Federal law." *See* Requirements on Content and Format of Labeling for Human Prescription Drug and Biologic Products, 71 Fed. Reg. 3922, 3935, 3934 (Jan. 24, 2006) ("FDA believes that under existing preemption principles, FDA approval of labeling under the act . . . preempts conflicting or contrary State law.").[9] This clear expression of regulatory intent raises a substantial federal question with respect to whether, in light of the FDA's position, plaintiff can claim Lilly is liable for allegedly failing to provide adequate warnings for Zyprexa. *See Abramowitz* v. *Cephalon,* 2006 WL 560639 (N.J. Super. L., Mar. 3, 2006).

Plaintiff further argues that, even if plaintiff's claims were preempted, this would not provide a basis for federal jurisdiction. Plaintiff's Br., at 18-20. However, all but one of the prescription drug cases cited by plaintiff were decided prior to *Grable*.[10]

The opinion in *Grable* states that the Court may consider preemption when weighing the substantiality of the federal questions presented. In discussing *Merrell Dow,* the *Grable* court noted that the primary importance of the absence of any federal cause of action "emerged when the Court treated *the combination of no federal cause of action and no preemption of state remedies for misbranding* as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." 125 S. Ct. at 2370 (emphasis added). Now that the FDA has stated emphatically that conflict preemption principles apply to failure-to-warn claims like those asserted

---

[9] On May 10, 2006, the FDA reaffirmed its position in an *amicus curiae* brief filed in the case of *Colacicco v. Apotex, Inc.,* Civil Action No. 05-CV-05500-MMB (E.D. Pa.). A copy of the FDA's *amicus* brief is attached as Exhibit A.

[10] The lone post-*Grable* prescription drug case cited by plaintiff for this proposition, *Witczak v. Prizer, Inc.,* 377 F. Supp. 2d 726 (D. Minn. 2005), decided only five weeks after *Grable*, failed to consider the *Grable* decision. Moreover, *Witczak*, which does not bind this Court in any event, construed 21 C.F.R. § 314.70(c)(7) to permit a manufacturer to unilaterally add information to its warnings without FDA approval. *Id.,* at 729. In its new Rule, the FDA re-emphasized the inaccuracy of this construction. The agency explained that "the determination whether labeling revisions are necessary is, in the end, squarely and solely FDA's under the [FDCA]." 71 Fed. Reg. at 3934. "In fact, FDA interprets the act to establish both a 'floor' and a 'ceiling'" on risk information included in medication labeling. *Id.,* at 3935. Plaintiff also cites one post-*Grable* decision involving an over-the-counter, rather than a prescription, medication. See *Peters v. AstraZeneca*, *L.P.,* 417 F. Supp. 2d 1051 (W.D. Wis. 2006).

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

by plaintiff, this Court can take these principles into account in assessing the substantiality of the federal questions.

Accordingly, the application of conflict preemption principles to plaintiff's claims, particularly when considered alongside the substantial federal questions raised by the Complaint, should solidify subject matter jurisdiction of this case.[11]

### E. Plaintiff's Complaint Raises Substantial Questions Under Federal Medicaid Law.

Plaintiff intends its off-label marketing and warnings allegations to support its claim that it is entitled to reimbursement of all Medicaid funds paid by the State of Alaska for Zyprexa prescriptions. Since plaintiff seeks to recover millions of dollars of largely-federal Medicaid money, claiming that Lilly has deceived the State's Medicaid agency, plaintiff cannot seriously dispute that there are substantial federal issues at stake.[12]

Plaintiff alleges that "[i]n making Zyprexa available to Medicaid patients, Defendant knowingly misrepresented to the State of Alaska that Zyprexa was safe and effective. The State of Alaska allowed the purchase of Zyprexa for Alaska Medicaid recipients based upon such

---

[11] The Complaint may also create federal question jurisdiction under the doctrine of complete preemption. Courts find complete preemption where there is a "congressional intent in the enactment of a federal statute not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal cause of action." 14B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3722.1 (3d ed. 1998 & Supp. 2005).

Here, complete preemption exists because, as explained above, Congress has so thoroughly and intentionally regulated the marketing and promotion of prescription medications that any challenge to such marketing and promotion necessarily states a federal cause of action.

Lilly acknowledges that there is no private right of action under the FDCA, and that, before *Grable*, a private right of action was a requirement under the complete preemption doctrine. In *Grable*, however, the United States Supreme Court rejected any bright-line rule that a private right of action is a *sine qua non* to substantial federal question jurisdiction, reasoning that Congressional intent to create a federal forum for an issue could be inferred even in the absence of a private right of action under federal law. *Grable*, 125 S. Ct. at 2370-71. Based on that rationale, courts should not regard Congress' creation of a private right of action as the only means of ascertaining Congressional intent vis-à-vis complete preemption.

[12] It is well settled that "[a] plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists." *In re Otter Trail Power Co.,* 116 F.3d 1207, 1213 (8thCir. 1997). Under the 'artful pleading doctrine,' a plaintiff may not "defeat removal by omitting to plead necessary federal questions in a complaint." *People of the State of California ex rel Bill Lockyer, Attorney General of the State of California, v. Powerex Corp.,* 2006 U.S. Dist. LEXIS 19634, at *6 - *7 (E.D. Cal., April 14, 2006), citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vocation Trust for S. Cal.,* 463 U.S. 1, 22 (1983)).

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

representations by Defendant." (Compl., ¶ 25.) In other words, according to plaintiff, the State would not have paid for Zyprexa for Medicaid patients were it not for Lilly's alleged misrepresentations and illegal marketing practices. Based on these allegations, plaintiff seeks "restitution damages for the cost of all Zyprexa prescriptions paid by the State." (Compl., Prayer for Relief.) In order to prevail on these claims, plaintiff must prove that, but for Lilly's alleged deception, the State would have acted differently regarding inclusion of Zyprexa in its Medicaid formulary, or otherwise regarding reimbursement for Zyprexa prescriptions.

For the analysis of federal jurisdiction, the significance of factual causation in these claims is that plaintiff must prove that the State could have made any such change consistent with the comprehensive regulatory scheme embodied in federal Medicaid law. Plaintiff's Medicaid-related claims therefore depend on the interpretation and application of federal Medicaid law. This situation is analogous to *Smith* in which the plaintiff shareholder, pursuing a cause of action under Missouri law, had to prove that the bonds proposed to be purchased were not a lawful investment for the bank of which he was a shareholder. *Smith,* 255 U.S. 180; *see also County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1031 (N.D. Cal. 2005) (state-law claims relating to overcharging Medicaid program for medicines raised substantial federal question); *State of Wisconsin v. Abbott Laboratories*, 390 F. Supp. 2d 815, 823 (W.D. Wisc. 2005) (plaintiff's state-law claim seeking recoupment of Medicaid funds raised substantial and disputed question of federal law).[13]

The federal Medicaid program authorizes federal grants to states to provide medical assistance to low income individuals. 42 U.S.C. § 1396, *et seq.* "Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services." *Wilder v. Virginia Hosp. Assn.,* 496 U.S. 498, 502 (1990). Specifically, federal law requires states, subject to certain narrow exceptions, to reimburse FDA-approved prescription drugs of any manufacturer that has

---

[13] The court in the *Wisconsin* case ultimately remanded the case because the court believed that the exercise of federal jurisdiction would alter the balance of federal and state responsibilities. However, the court's conclusion was persuasively criticized in *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1030-31 (N.D. Cal. 2005)(finding that federal jurisdiction over drug-pricing cases would not alter the balance of responsibilities).

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

entered into and complies with a rebate agreement with the Secretary of Health and Human Services, 42 U.S.C. § 1396r-8(d)(4)(B).  Thus, Alaska must, under federal law, reimburse companies for drugs, such as Zyprexa, if the manufacturer complies with federal requirements.  The only time a state may exclude from its formulary a covered outpatient drug subject to a rebate agreement is "with respect to the treatment of a specific disease or condition for an identified population . . . if, based on the drug's labeling . . . the excluded drug does not have a significant clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion." 42 U.S.C. § 1396r-8(d)(4)(D).  Moreover, even a decision to require authorization before reimbursement must satisfy federally mandated requirements.  42 U.S.C. §§ 1396r-8(d)(4)(E), (d)(5).  Thus, every step a state takes with regard to coverage of an FDA-approved drug is subject to strict federal mandates.  In addition, federal funds constitute at least 50% of Alaska's Medicaid program funds, which funds are at issue in this lawsuit.  Judge Weinstein held that he had federal question jurisdiction over similar state law claims involving the State of Louisiana's payments for Zyprexa under Medicaid.  The court found that references in the complaint to federal funding provisions and laws demonstrated "a core of substantial issues [that were] federally oriented." *In re Zyprexa,* 375 F. Supp. 2d at 172-73.

In addition to the cases previously cited, several other courts, in diverse contexts implicating federal statutes or complex federal regulatory schemes, have found federal question jurisdiction under *Grable* for claims sounding in state common or statutory law.  For example, the United States District Court for the Eastern District of California denied remand in a case brought by the Attorney General of that State.  In *People of the State of California Ex. Rel. Bill Lockyer v. Powerex Corp.*, 2006 U.S. Dist. LEXIS 19634 (E.D. Cal., April 13, 2006), California sought to recover damages for state antitrust violations related to illegal sales of energy at "out of market" ("OOM") rates.  The Court held that, although the claims in the complaint sounded in violations of state law, the complaint "involve[d] a substantial federal question because . . . [the] Federal Energy Regulatory Commission has the exclusive authority to decide whether power is or is not in-state or OOM and whether a given quantity wholesale electricity can be legally sold at OOM rates." *Id.,* 2006 U.S. Dist. LEXIS at *12.  *See also, e.g., Municipality of San Juan v. Corporacion Para El*

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

*Fomento Economico De La Ciudad Capital,* 415 F.3d 145 (1st Cir. 2005) (where propriety of defendant's conduct "turns entirely on its adherence to the intricate and detailed set of federal regulatory requirements and the funds at issue are federal monies," federal question jurisdiction proper under *Grable*); *Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2d Cir. 2005) (complaint raised substantial federal question, creating federal question jurisdiction, where state-law claims required court to decide whether defendants violated Communications Act of 1934).

In sum, plaintiff's claims arise "in an area . . . that impact[s] a complex federal regulatory scheme." *County of Santa Clara*, 401 F. Supp. 2d at 1027. Accordingly, like *In re Zyprexa, County of Santa Clara,* and the other cited cases, this case should remain under the jurisdiction of this Court.

### F.  The Federal/State Balance Will Not Be Adversely Affected.

Plaintiff argues that "a finding of federal jurisdiction under the circumstances extant in this case would cause a seismic shift in the balance between the state and federal judicial systems," resulting in the inundation of the federal court system with "exponential" numbers of cases, "including state law tort claim[s] arising from . . . auto accident[s]" where the plaintiffs are Medicaid recipients. (Plaintiff's Br., at 15.) Plaintiff's argument is pure hyperbole, without reference to the posture of this case or the nature of the claims alleged. This is a case filed by a state Attorney General on behalf of the state, alleging violation of federal law over several years relating to a medicine closely regulated by a federal agency. Moreover, the State is seeking to recover millions of dollars, at least half of which was received from the federal government. The exercise of federal jurisdiction here will not attract "a horde of original filings and removal cases raising other state claims with embedded federal issues," as the Court in *Merrell Dow* had feared. *See Grable,* 125 S. Ct. at 2370. Like the Louisiana case considered in *In re Zyprexa,* this is not a routine product liability/personal injury case of the *Merrell Dow* type. Rather, this suit, like the Louisiana Attorney General's lawsuit, fully deserves the attention of a federal court, given the federal interests at stake throughout the case. The balance of the workload between federal and state courts will not be altered greatly by this case or cases like it, especially in light of the pending MDL. The number of potential suits by States raising similar allegations is necessarily finite, and, at its maximum, will have a miniscule effect on the workload of the federal court system.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

## CONCLUSION

Federal issues pervade plaintiff's complaint; accordingly, the Motion to Remand should be denied.

DATED this 23rd day of May, 2006.

LANE POWELL LLC<br>
Attorneys for Defendant<br>
<br>
By  s/ Brewster H. Jamieson<br>
301 West Northern Lights Boulevard, Suite 301<br>
Anchorage, Alaska  99503-2648<br>
Tel: 907-277-9511<br>
Fax: 907-276-2631<br>
Email: jamiesonb@lanepowell.com<br>
ASBA No. 8411122

I certify that on May 23, 2006, a copy of the foregoing was served by ECF on:

Eric T. Sanders, Esq. sanders@frozenlaw.com

  s/ Brewster H. Jamieson
121873.0001/155240.1

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska  99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

**Defendant's Opposition to Motion to Remand to State Court**
*State of Alaska v. Eli Lilly and Company* (Case No. 3:05-cv-00088-TMB)                    Page 12 of 12